# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ARMANDO HERNANDEZ, JR. ) | |
| ) | |
| Plaintiff, ) | |
| ) | No: 13-CV-00153 |
| v. ) | |
| ) | |
| CHICAGO POLICE OFFICER ) | Honorable Judge Harry D. Leinenweber |
| HERNANDEZ (Star #12289), ) | |
| CHICAGO POLICE OFFICER MCCLAIN ) | Magistrate Judge Jeffrey Cole |
| (Star #4915), and the CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | **JURY DEMANDED** |

## PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ON HIS ILLEGAL SEIZURE CLAIM AND MOTION FOR A NEW TRIAL PURSUANT TO RULE 59(a)

NOW COMES Plaintiff, ARMANDO HERNANDEZ, JR., by and through his attorneys, Mary J. Grieb of the Shiller Preyar Law Offices, hereby moves this Court for judgment as a matter of law as to Plaintiff's illegal seizure claims against the individual Defendants pursuant to Federal Rule of Civil Procedure 50, and, alternatively, for a new trial pursuant to Federal Rule of Civil Procedure 59(a).

## Introduction

As an initial matter, the parties have reached a settlement in principle of this case as of June 25, 2014. In the unlikely event that the settlement falls through, however, Plaintiff files the instant motion out of an abundance of caution and in order to preserve these issues.

Plaintiff moves this Court for renewed judgment as a matter of law, pursuant to FRCP Rule 50(b), on Plaintiff's illegal seizure claim against Defendants Hernandez and McClain. Plaintiff is entitled to judgment in his favor because, based on their own testimony, Defendants

1

did not have a reasonable suspicion that Plaintiff was committing a crime when they stopped and detained him on July 22, 2012.

Alternatively, Plaintiff moves this Court for a new trial pursuant to FRCP Rule 59(a) for two reasons. It was error not to permit Plaintiff to inquire of Defendant Officers that they did not call detectives, Assistant State's Attorneys or evidence technicians after they arrested Plaintiff, even though they claimed Plaintiff had committed the felonies of aggravated battery or aggravated assault of a police officer. Second, it was error not to allow Plaintiff to inquire of Defendant officers of three separate occasions in which, when faced with an accusation of misconduct (i.e., stopping an individual without case), they claimed that the person they stopped was loitering in a high crime area. Such errors prejudiced Plaintiff and are cause for a new trial.

**Relevant Factual Background**

A trial in this matter commenced on May 27, 2014. Plaintiff ultimately brought five claims to the jury: illegal seizure and false arrest against both individual Defendants, excessive force against Defendant Hernandez, failure to intervene to prevent the use of excessive force against Defendant McClain, and malicious prosecution against both the individual Defendants and Defendant City.

Prior to commencement of the trial, the parties filed various motions *in limine* and responses. Relevant here, Plaintiff filed motion *in limine* No. 17, a Notice of Intent to introduce FRE 404(b) and motion to be able to cross-examine Defendants as to Certain CRs. Dkt. 52. Plaintiff sought the introduction of six CRs as evidence of Defendants' motive to lie and/or as evidence of a common scheme, plan or design. In particular, as evidence of a common scheme, plan or design, Plaintiff sought to inquire of Defendants about three complainants who had accused the officers of detaining them without reason. In CR 1009741, Antonio Campbell

alleged that Defendant Hernandez detained and handcuffed him, searched him, and drove erratically while was on the floor of a squadrol. Hernandez's response was that Campbell was shouting profanities at passing motorists at 69th and Ashland and that he stopped Campbell because he was concerned for Campbell's safety. In CR 1043405, Avery Tate alleged that Hernandez and McClain stopped and searched him without justification and handcuffed him too tightly. In response to the accusation, Hernandez and McClain said that they conducted the stop because the complainant was loitering in a high crime area; similar to the case at bar, Defendants charged Tate with reckless conduct and accused him of fighting in the street causing motorists to evade him. Third, in CR 1045646, Thomas Hill alleged that Hernandez and McClain inappropriately detained and searched him, and cuffed him too tightly. Again, Hernandez and McClain responded that Hill was loitering in a 7th District "hot spot." All three citizen complaints were not sustained. On May 27, 2014, this Court denied on the record Plaintiff's motion *in limine* No. 17 prior to the commencement of trial.

At trial, in the parts most relevant here to his illegal seizure claim, Plaintiff Armando Hernandez, Jr., testified that he was walking on the sidewalk on the east side of Ashland Avenue, near a Cosmo Beauty Supply store and a Food for Less grocery store (near 70th Street and Ashland in the Englewood neighborhood of Chicago), when Defendants McClain pulled up to him in their SUV at an angle and stopped him in his tracks.[1] Plaintiff further testified that Defendants asked him who he was and what he was doing and that he responded that he was going home. Defendants then got out of the SUV and asked Plaintiff to take his hands out of his pockets. Plaintiff refused and said, "I can do whatever the fuck I want," or words to that effect. After that, Plaintiff testified that he was pushed against the SUV and handcuffed.

---

[1] The undersigned does not yet have a transcript of Plaintiff's testimony; the summary above comes from her own notes and memory of Plaintiff's testimony.

For their part, Defendant Officers' version of the initial detention of Plaintiff differed.[2] Defendant Hernandez testified he and his partner were heading southbound on Ashland Ave. when they first noticed Plaintiff walking northbound on the east side of Ashland Avenue "at the curb and grassy area by the street." See Excerpt Transcript of Proceedings, p. 27, attached and heretofore referred to as Exhibit A. Defendant Hernandez observed Plaintiff shouting "Fuck you, nigger" to passing motorists and when he asked Plaintiff what he was doing, Plaintiff responded "Fuck you, nigger" to Hernandez. *Id.* at p. 28. Defendant Hernandez further testified that Plaintiff was a Latino man in a predominantly African-American neighborhood that Plaintiff was causing motorists to slow down and impeding traffic, and that Plaintiff was shouting the "n-word" to passing motorists. *Id.* (Hernandez later clarified that he did not personally see cars swerving to avoid Plaintiff. *Id.* at 36). Defendant Hernandez did not see Plaintiff wander in and out of the street. *Id.* at pp. 28-29. Defendant Hernandez testified that Plaintiff's fists were balled up and Plaintiff was walking "aggressively." *Id.* at 29, 32. Defendant Hernandez stated that he wanted to investigate Plaintiff's bizarre behavior. *Id.* at 30. Defendant Hernandez also admitted that he thought Plaintiff was out of place because he was a Hispanic guy in an all black-neighborhood. *Id.* at 36. Finally, Defendant Hernandez and his partner were walking towards Plaintiff and ordered him to take his hands out of his pockets. *Id.* at 37. Plaintiff did not take his hands out of his pockets at that time. *Id.* Defendant Hernandez and his partner then pulled Plaintiff's hands of his pockets and handcuffed him for officer safety reasons. *Id.* at. 40.[3]

With respect to their initial seizure of Plaintiff, Defendant McClain's testimony was similar to that of her partner. McClain testified that as she and her partner were turning south on

---

[2] Plaintiff disputed most of Defendants' testimony about his actions; nevertheless, for the purposes of the instant motion, Plaintiff accepts Defendants' testimony as true.

[3] Defendant Hernandez later admitted that he intended to arrest Plaintiff because of Plaintiff's use of obscenities, because Plaintiff was in the street, and because Plaintiff did not comply with the officers' verbal direction to remove his hands from his pockets. *Id.* at 56.

to Ashland from 69th Street, she first noticed Plaintiff. *Id.* at p. 118. Her partner made a u-turn and she then noticed Plaintiff walking in the middle of the street and on to the sidewalk while at the same time swearing and yelling the "n-word" four or five times. *Id.* at 119, 121. McClain also testified that Hernandez was in the middle of the street flailing his arms, balling his hands up in a fist, and looking disgruntled. *Id.* at 122. McClain further stated that she saw two to three cars swerve to avoid hitting Plaintiff. *Id.* When Defendants approached Plaintiff in their SUV, he shoved his hands in his pockets and told them to "fuck off" twice. *Id.* at 123. When they got out of their vehicle, McClain pulled one arm out of Plaintiff's pockets. *Id.* at 139.

After Plaintiff was handcuffed, he was taken down to the ground by Defendant Hernandez. As a result of being taken to the ground, Plaintiff suffered cuts, bruises and bleeding to his face, cheeks, forehead, nose and lips. Plaintiff testified that he was slammed to the ground face-first without provocation. Defendants McClain and Hernandez testified that Plaintiff "mule-kicked" them while he was pushed up against the SUV and that Hernandez escorted him to the ground for officer safety. McClain testified that the kicks grazed her shin. Hernandez testified that the kicks "grazed" his pant leg. Defendants McClain and Hernandez brought Plaintiff to the 7th District police station. There, McClain, Hernandez and Sgt. Boyle, discussed what criminal charge to place against Plaintiff. They decided to charge Plaintiff with misdemeanor reckless conduct. The charge was stricken off with leave to reinstate at the first court date, but was not reinstated.

During the re-direct examination of Defendant Hernandez, Plaintiff's counsel attempted to ask why they did not charge Plaintiff with a felony.

> Q. Okay. Officer Hernandez, you've made dozens of arrests
> for aggravated battery of a police officer, didn't you --
> haven't you?
> A. Yes.

5

> Q. Okay. And you've made dozens of arrests for aggravated
> assault to a police officer, haven't you?
> A. Yes.
> Q. And you know that when that charge is made, when those
> felony charges are made, an evidence technician is usually
> called in, isn't it?
> MR. GAINER: Objection. Beyond the scope, your
> Honor.
> THE COURT: I -- yes, I think so. Let's -- let's
> wrap this up.
> MR. SHAPIRO: I understand, your Honor. I'm trying
> but there's some important points I need to get out to that I
> think were within the scope. I'll get to my point very
> quickly.
> BY MR. SHAPIRO:
> Q. So you would have had to call in an evidence technician --
> MR. GAINER: Same objection.
> BY MR. SHAPIRO:
> Q. -- if you had charged him with a felony; is that correct?
> MR. GAINER: Same objection.
> THE COURT: Objection sustained.
> BY MR. SHAPIRO:
> Q. You would have had to call in a detective for a felony,
> wouldn't you have?
> MR. GAINER: Same objection.
> THE COURT: Objection sustained. I think we're
> getting far afield.

*Id.* at pp. 115-116. Plaintiff's counsel ended re-direct shortly thereafter.

On May 29, 2014, after deliberating for several hours, the jury returned its verdict in favor of Defendants, and against Plaintiff, on Plaintiff's illegal seizure, false arrest and malicious prosecution claims. Dkt. 61. On that same day, judgment was entered against the plaintiff and in favor of Defendants McClain and Hernandez. *Id.* This court declared a mistrial as to Plaintiff's claims for excessive force and failure to intervene. *Id.*

## ARGUMENT

I. **Plaintiff Is Entitled to Judgment as a Matter of Law as to His Illegal Seizure Claim Against Defendants McClain and Hernandez**

Pursuant to Federal Rule of Civil Procedure 50, judgment as a matter of law is proper when a party has been fully heard on an issue, and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000); Fed. R. Civ. P. 50. The standard for judgment as a matter of law under Fed. R. Civ. P. 50, mirrors the standard for summary judgment under Fed R. Civ. P. 56. *Id.* As such, the court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence. *Id.*

On May 28, 2014, Plaintiff orally moved this Court for judgment as a matter of law, pursuant to Rule 50(a), on his illegal seizure claim against Defendants Hernandez and McClain. This Court denied Plaintiff's on the record. Plaintiff supplemented his oral motion with a written filing on May 29, 2014. Dkt. 59. Now, Plaintiff has met the procedural requirements and accordingly makes a renewed motion for judgment as a matter of law pursuant to FRCP Rule 50(B). When "there is no legally sufficient basis for a reasonable jury to find for that party, the court may grant a motion for judgment as a matter of law against that party...." Fed.R.Civ.P. 50(a)(1). A motion for judgment as a matter of law made after conclusion of the trial is the renewal of a motion for judgment as a matter of law brought before the matter was submitted to the jury. Fed.R.Civ.P. 50(b). If a motion for judgment as a matter of law is not made at the close of the evidence, a party may not bring such a motion after the jury's verdict under Rule 50(b). *See McCarty v. Pheasant Run, Inc.,* 826 F.2d 1554, 1555 (7th Cir.1987) (moving for directed verdict at close of evidence is prerequisite to judgment under Fed.R.Civ.P. 50(b)).

Accepting Defendants' testimony on its face, and drawing all reasonable inferences in their favor, as this Court must do at this stage, Plaintiff is still entitled to judgment as a matter of

7

law on his Section 1983 illegal seizure claim because there is no legally sufficient evidentiary basis for a reasonable jury to find that Defendants McClain and Hernandez had a reasonable suspicion to stop and detain Plaintiff.

As an initial matter, there is no dispute that when Defendants ordered Plaintiff to take his hands out of his pockets, Plaintiff was seized. A seizure within the meaning of the Fourth Amendment occurs "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio,* 392 U.S. 1, 16 (1968). Of course, a seizure does not occur every time a police officer approaches someone to ask a few questions. *Florida v. Bostick,* 501 U.S. 429, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991). However, if a reasonable person, under the circumstances, would have believed that [he/she] was not free to end the encounter, then at that point the encounter has turned into a "stop" that counts as a "seizure" for purposes of the Fourth Amendment. *United States v. Mendenhall*, 446 U.S. 544 (1980). In determining whether a person feels free to the end the encounter, the court will consider both the officers' physical force and show of authority upon the seized individual. *California v. Hodari D.*, 499 U.S. 621, 625, (1991). The critical question, then, is whether Defendants had a reasonable suspicion that Plaintiff had committed a crime at the time they made a show of authority.

Plaintiff is entitled to judgment as a matter of law on his illegal seizure claim because Defendants had no reasonable suspicion that he committed a crime before they detained him. To find otherwise would allow police officers to detain a citizen merely because they believed that the citizen was "out of place." Accepting their own testimony as true, just prior to ordering Plaintiff to take his hands out of his pockets, Defendants, collectively, observed Plaintiff a) walk in and out of the street, b) cause two cars to swerve, c) yell "Nigger" and profanities at passing

8

motorists, d) yell "Nigger" and profanities at Defendant officers, and e) ball up his fists and flail his arms. Those actions, taken separately or in conjunction with each other, do not give rise to a reasonable suspicion that a crime was being committed and thus did not provide Defendants with justification to seize Plaintiff.

Under *Terry*, a police officer may stop and question an individual if the officer has a reasonable suspicion that the individual is engaged in criminal conduct. *Terry v. Ohio,* 392 U.S. 1, 21-22 (1968). In deciding whether reasonable suspicion existed, courts should "consider the totality of the circumstances as they were presented to the officer at the time of the encounter." *United States v. Scheets,* 188 F.3d 829, 837 (7th Cir.1999) (internal citation omitted). Reasonable suspicion is satisfied if, at the time of the stop, "specific and articulable facts," along with the officer's reasonable inferences from those facts, warrant the stop. *Terry,* 329 U.S. at 21-22. A "hunch" or general suspicion that a suspect is engaging in criminal activity will not justify a *Terry* stop. *United States v. Brown,* 188 F.3d 860, 864 (7th Cir.1999).

The only two crimes Defendants even arguably had reasonable suspicion for are reckless conduct and disorderly conduct. First, under Illinois law, a person commits reckless conduct when he or she, by any means lawful or unlawful, recklessly performs an act or acts that: (1) cause bodily harm to or endanger the safety of another person;" *720 ILCS 5/12-5* (West 2011). "A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." 720 ILCS 5/4–6 (West 2002); *People v. Watkins*, 361 Ill. App. 3d 498, 500, 837 N.E.2d 943, 945 (2005). Plaintiff walking in and out of the street, yelling profanities, yelling racial slurs, and balling up his fists and flailing his arms

9

(but not striking anyone or coming near to striking anyone) simply does not rise to the level of endangering the safety of another person. Similarly, there was no testimony that Plaintiff caused bodily harm to any person. The only close call is McClain's testimony that Plaintiff caused two cars to swerve (its corollary is Defendant Hernandez's testimony that Plaintiff caused cars to "slow down"). In this case, there was no evidence that Plaintiff's conduct endangered the safety of any person, whether it was a passing motorist or police officer. Defendants presented no evidence of any car accidents or near accidents, or of any pedestrian or driver suffering any injury as a result of Plaintiff's alleged conduct.

Furthermore, Plaintiff's actions did not rise to the level of the crime of disorderly conduct. In Illinois, a person commits the crime of disorderly conduct when he knowingly, (1) does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace. 720 ILCS 5/26-1.) What is reasonable must always depend upon the particular case. *City of Chicago v. Wender*, 46 Ill. 2d 20, 24, 262 N.E.2d 470, 472 (1970). However, "the relationship between the alleged conduct and the public order must be clearly shown." *People v. Ellis*, 141 Ill. App. 3d 632, 633, 491 N.E.2d 61, 62 (1986). Further, the law requires that the conduct "must actually bring about a breach of the peace and not merely tend to do so. *People v. Allen*, 288 Ill. App. 3d 502, 506, 680 N.E.2d 795, 798 (1997). Illinois courts have consistently held that vulgar language does not amount to criminal disorder. *People v. Douglas*, 29 Ill. App. 3d 738, 742, 331 N.E.2d 359, 363 (1975). Moreover, "arguing with a police officer, even if done loudly, will not of itself constitute disorderly conduct." *People v. Gentry*, 48 Ill. App. 3d 900, 905, 363 N.E.2d 146, 150 (1977). Thus, even when Plaintiff used profanities and racial slurs with the officers and passing motorists, Defendants still did not have reasonable suspicion to believe that Plaintiff was committing the crime of disorderly conduct. There was no testimony

10

that anyone heard the Plaintiff use profanities or racial slurs other than the Defendants themselves. Plaintiff's language did not cause any public disorder whatsoever. Moreover, "balling up" one's fists is unquestionably not alarming or disturbing within the meaning of the statue. Lastly, the testimony that Plaintiff caused two cars to swerve or slow down still does not give rise to the crime of disorderly conduct. In Illinois, the law is clear that a criminal defendant must actively block traffic in order to be guilty of disorderly conduct. *Jones v. Watson*, 106 F.3d 774 (7th Cir. 1997), certiorari denied 118 S.Ct. 56, 522 U.S. 812, 139 L.Ed.2d 20.

In sum, Plaintiff is entitled to judgment as a matter of law on his illegal seizure claim.

## II.     Alternatively, Plaintiff Suffered Unfair Prejudice and Is Entitled to a New Trial

"The exercise of a trial court's power to set aside the jury's verdict and grant a new trial is not in derogation of the right of trial by jury" but is instead "one of the historic safeguards of that right." *Garperini v. Center for Humanities, Inc.*, 518 U.S. 415, 433 (1996) (internal quotation omitted). *See also Juneau Square Corp. v. First Wisc. Nat'l Bank*, 624 F.2d 798, 806 n.11 (7th Cir. 1980) ("it is the [trial judge's] right, and indeed his duty, to order a new trial if he deems it in the interest of justice to do so") (quoting Wright & Miller, Federal Practice and Procedure: §2803 (1973 & Supp. 1979)).  FRCP Rule 59 allows a court to order a new trial if "the verdict is against the clear weight of the evidence or the trial was unfair to the moving party."  *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011) (internal citation omitted). In reviewing a trial court's decision on a motion for a new trial, appellate courts apply an abuse of discretion standard.  *Williams v. City of Valdosta*, 689 F.2d 964 (11th Cir. 1982)

### A. Plaintiff Was Unfairly Prejudiced Because Plaintiff's FRE 404(b) motion was denied

Plaintiff is entitled to a new trial because this Court improperly denied Plaintiff's motion to allow FRE 404(b) evidence of Defendants' common scheme and plan to claim that a person

11

was loitering in a high-crime area and/or waving his arms and yelling profanities at motorists to justify their own illegal stops of citizens without any legal justification. In this trial, the credibility of the parties was, as always, a critical issue. Plaintiff testified that he did not wave his arms or yell profanities or racial slurs at passing motorists or the defendant officers and that he did not walk in the street at all; in short, Plaintiff testified that he did nothing illegal on the night of his arrest. On the contrary, Defendants testified that Plaintiff was in a high-crime area, loitering, waving his arms and swearing at passing motorists and the police, and using racial slurs. The jury's verdict indicates that they believed Defendants. Plaintiff was unfairly prejudiced by this Court's ruling that he could not inquire on cross examination of the Defendants about the three prior citizen complaints accusing Defendants of the exact same false justification. Had Plaintiff been allowed to attack the credibility of Defendants by pointing out that their proffered "justification" was part of a common plan or scheme, the results of the trial may have been different and the jury would have been more likely to believe Plaintiff. For this reason, Plaintiff respectfully requests a new trial.

    **B. Plaintiff Was Unfairly Prejudiced Because Plaintiff was not allowed to cross-examine Defendant Hernandez about his failure to call Detectives and Evidence Techs after Plaintiff's Arrest**

Plaintiff was also unfairly prejudiced, and is entitled to a new trial, because this Court erred in sustaining objections to Plaintiff's counsel's questions of Defendant Hernandez regarding calling an evidence technician and/or detective. To rebut Defendant Hernandez's testimony that he could have charged Plaintiff with a felony such as aggravated battery or aggravated assault, but decided to cut Plaintiff a break, Plaintiff sought to inquire of the consequences of charging Plaintiff with a felony. Plaintiff sought to elicit testimony that detectives would be called, which would result in statements being made by Defendants McClain

and Hernandez and Sgt. Boyle, and further result in Assistant State's Attorneys being called to approve felony charges. Plaintiff also sought to elicit testimony that if evidence technicians were called, there would have been a clear photographic record of Plaintiff's injuries within an hour of them happening, rather than blurry mug shot photos. Plaintiff's theory of the case was that Defendant Officers covered up their use of unreasonable force by trumping up a charge against Plaintiff at the station and by conspiring with each other and Sgt. Boyle, their supervisor, to minimize the paperwork and photographic evidence of Plaintiff's injuries by merely charging him with misdemeanor reckless conduct. Bias and motive to lie are always relevant. Questions regarding the consequences of charging Plaintiff with a felony when, as the Defendants testified, he allegedly did commit battery against a police officer when he kicked the officers, were within the scope of re-direct and it was error to sustain the objections. As a result of that error, Plaintiff suffered unfair prejudice when he was not allowed to argue to the jury that Defendants knew they used too much force and falsely arrested Plaintiff and covered it up by not calling in detectives (and ASAs) and evidence techs to document Plaintiff's injuries. For that reason, Plaintiff seeks a new trial.

## **Conclusion**

Plaintiff respectfully moves this Honorable Court for judgment as a matter of law for Plaintiff's illegal seizure claim against Defendants McClain and Hernandez, pursuant to Federal Rule of Civil Procedure 50(B), or, in the alternative, for a new trial pursuant to Federal Rule of Civil Procedure 59(a).

    Respectfully submitted,

    s/ Mary J. Grieb
    Mary J. Grieb
    Shiller Preyar Law Offices
    1100 W. Cermak, Suite B401

Chicago, IL 60608
(312) 226-4590

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served upon all opposing counsel via the EM/ECF email system.


Respectfully submitted,

\_\_\_\_s/ Mary J. Grieb_____


Shiller Preyar Law Offices
1100 W. Cermak, Suite B401
Chicago, IL 60608
(312) 226-4590